UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALBERTO MOLINA, NELSON SAYAGO, GUSTAVO CEDENO and HUGO MOSQUERA,**

      **Plaintiffs,**

v.   Case No:  6:13-cv-1111-Orl-22KRS

**HENTECH, LLC, JIC DRIVE SERVICE, INC., HENRY NKETEH, DOLLAR THRIFTY AUTOMOTIVE GROUP, INC. and HERTZ GLOBAL HOLDINGS, INC.,**

      **Defendants.**

## ORDER

This cause comes before the Court on Plaintiffs Alberto Molina, Nelson Sayago, Gustavo Cedeno, and Hugo Mosquera's (collectively, the "Plaintiffs") Objections to the Report and Recommendation[1] (Doc. No. 94) to Magistrate Judge Karla R. Spaulding's Report and Recommendation (the "R & R") (Doc. No. 91), wherein Judge Spaulding recommended that Defendants Dollar Thrifty Automotive Group ("DTAG") and Hertz Global Holdings, Inc.'s ("Hertz Holdings") (collectively, the "Defendants") Motion for Summary Judgment (Doc. No. 73) be granted. (Doc. No. 91 at 21.) For the reasons contained herein, Plaintiffs' objections are overruled, and the R & R will be adopted and confirmed.

### I. BACKGROUND

At all times relevant to their claims, Plaintiffs provided services to Defendants in Plaintiffs' capacity as drivers employed by Hentech, LLC ("Hentech"). (Doc. No. 8 ¶¶ 3-7, 21.) In

---

[1] Plaintiffs titled their objections as "Plaintiffs' Response in Opposition to Report and Recommendation".

March 2008, Hentech entered into a service contract with DTAG, wherein Hentech agreed to provide drivers for the pick-up and delivery of vehicles to and from several locations in Orlando and surrounding areas. (*Id.* ¶¶ 14, 15; Doc. No. 90 at 4.) Plaintiffs aver that Defendants were Plaintiffs' joint employers during the period of time that they provided these services to Defendants. (Doc. No. 8 ¶¶ 3-7.)

On August 22, 2013, Plaintiffs filed an amended complaint (the "Amended Complaint") against Hentech, JIC Drive Service, Inc., Henry Nketeh ("Nketeh"), DTAG, and Hertz Holdings (collectively, the "Original Defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA") and the Florida Minimum Wage Act, section 448.110, Florida Statutes ("FMWA"). (Doc. No. 8.) Plaintiffs filed the Amended Complaint "on behalf of themselves and other similarly situated individuals employed by [the Original] Defendants as [d]rivers and [l]ead drivers [hereafter referred to as 'Drivers'] . . . ." (*Id.* ¶ 3.)[2] Plaintiffs averred that the Original Defendants violated the FLSA by failing to pay overtime compensation (*Id.* at 5-6), and that they violated the FMWA by failing to pay the required amount of minimum wage. (*Id.* at 7-8.)

On November 3, 2014, after the claims against Nketeh were stayed and the Clerk of Court entered defaults against Hentech and JIC Drive Service, Inc. (*See* Docs. No. 25, 86, 39-42), DTAG and Hertz Holdings moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*See* Doc. No. 73 at 1.) As grounds therefore, Defendants aver that they are not Plaintiffs' joint employers, nor did they serve as such at any point during the Plaintiffs' employment with Hentech. (*Id.* at 13-23.) Further, Defendants argue that the Plaintiffs failed to abide by the requirements of the FMWA because Plaintiffs did not notify Defendants of their intent

---

[2] The Court notes that no other individuals filed consents to join the case as party plaintiffs.

to file a lawsuit for unpaid wages. (*Id.*at 23-25.) In their response to the Motion for Summary Judgment, Plaintiffs withdrew their claim that Defendants violated the FMWA. (*See* Doc. No. 79 at 2 n.1.) However, Plaintiffs still seek to hold Defendants liable as joint employers under the FLSA for "all overtime wages owed[,] including liquidated damages in an amount equal to the total overtime wages owed, in addition to reasonable attorneys' fees and costs." (Doc. 90 at 4.)

After the Magistrate Judge issued the R & R, Plaintiffs filed objections to various factual findings in the R & R, averring that "genuine issues of material fact existed regarding [] DTAG's status as a joint employer . . . ." (Doc. No. 94 at 2.) Additionally, Plaintiffs argue that "the [R & R] did not draw all reasonable inferences from the evidence in the light most favorable to the Plaintiffs." (*Id.*) Further, Plaintiffs allege that the R & R does not satisfactorily address the different working relationships that the individual Plaintiffs had with DTAG during their terms of employment with Hentech. (*Id.*)

## II. LEGAL STANDARD

District courts review *de novo* any portion of a magistrate judge's disposition of a dispositive motion to which a party has properly objected. Fed. R. Civ. P. 72(b)(3); *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 n.3 (11th Cir. 2011) (per curiam).[3] The district judge may reject, modify, or accept in whole or in part the magistrate judge's recommended disposition, among other options. Fed. R. Civ. P. 72(b)(3). *De novo* review of a magistrate judge's findings of fact must be "independent and based upon the record before the court." *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988). However, the district court "need only satisfy itself that there is no clear error on the face of the record" in order to affirm a portion of the Magistrate Judge's

---

[3] Unpublished Eleventh Circuit cases are persuasive, but they are not binding.

recommendation to which there is no objection. Fed. R. Civ. P. 72 advisory committee's note (1983).

### III. ANALYSIS

The FLSA defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An entity "employs" a person if it "suffer[s] or permit[s]" the individual to work, which is determined by asking "if, as a matter of economic reality, the individual is dependent on the entity." *Id.* § 203(g); *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012) (citing *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 936-37 (1961)). The court must consider "each employment relationship as it exists between the worker and the party asserted to be a joint employer." *Layton*, 686 F.3d at 1177. Additionally, "[a]n employee may have more than one employer, and 'whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the [FLSA] depends upon all the facts in the particular case.'" *Id.* (quoting 29 C.F.R. § 791.2(a)). The parties agree on the following:

> To succeed on their allegations of joint employment under the FLSA, Plaintiffs must present evidence of the following factors in the relationship between them and DTAG and between them and Hertz Global [Holdings]: (1) nature and degree of control of the workers; (2) degree of supervision, direct or indirect, of the work; (3) right, directly or indirectly, to hire, fire[,] or modify the employment conditions of the workers; (4) power to determine the pay rates or methods of payment; (5) preparation of payroll and payment of wages; (6) ownership (or leasing) of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities. However, no one factor is determinative and the existence of a joint employment relationship depends on the economic reality of all the circumstances.

(Doc. No. 90 at 6.); *see Layton*, 686 F.3d at 1176-78 (explaining the Eleventh Circuit's use and analysis of the eight (8) factors when determining the existence of a joint employment relationship

in FLSA case); *see also Diaz v. U.S. Century Bank*, No. 12-21224-CIV, 2013 WL 2046548, at *4 (May 14, 2013) ("[N]o one factor is determinative as the existence of a joint employment relationship depends on the economic reality of all the circumstances.").

### A. Defendant Hertz Holdings as Joint Employer

Plaintiffs did not file an objection to the finding in the R & R that Hertz Holdings fails to qualify as Plaintiffs' joint employer, and they do not cite evidence to show that any of the joint employment factors exist with respect to Hertz Holdings. Additionally, Plaintiffs admit that Hertz Holdings never entered into a contract with Hentech, never saw Plaintiffs' paychecks, never knew how much Plaintiffs were paid in any paycheck, and never willfully failed to pay overtime wages. (*See* Doc. No. 90 at 4, 6.) Also, the parties agree that Hertz Holdings does not own DTAG. (*Id.* at 4.)

Based on the undisputed facts concerning the lack of an employment relationship between Plaintiffs and Hertz Holdings, it is clear that Hertz Holdings was not Plaintiffs' joint employer during the relevant time period. The findings in the R & R regarding same are not clearly erroneous, and the Court will enter summary judgment in favor of Hertz Holdings.

### B. Defendant DTAG as Joint Employer

*1. Nature and Degree of DTAG's Control over the Drivers*

Plaintiffs object to the Magistrate Judge's findings that the control factor weighs against finding that DTAG qualifies as Plaintiffs' joint employer. (*See* Doc. No. 94 at 3.) In support of their argument, Plaintiffs provide portions of Molina's deposition testimony to show that "[a]t the very least, the Magistrate Judge should have recommended that summary judgment be denied as to [Molina]." (*Id.*) Plaintiffs state that Molina testified to receiving regular instructions from Isaac Dickerson ("Dickerson"), a DTAG manager (*see* Doc. No. 79 at 12), throughout the course of

Molina's employment with Hentech. (*See* Doc. No. 94 at 3.) Plaintiffs also allege that Molina received instructions from Hector Montavlo ("Montavlo"), the DTAG employee in charge of the Jetport lot.[4] (*Id.*) Plaintiffs aver that, making reasonable inferences in their favor, the Magistrate Judge should have found that DTAG was actively involved in how Plaintiffs performed their job. (*Id.*) Such an inference would, according to Plaintiffs, "indicate a joint employment relationship between [] DTAG and Plaintiffs. (*Id.*)

For purposes of analyzing the nature and degree of a purported joint employer's control over an alleged employee, courts have held that "[c]ontrol arises . . . when the [purported joint employer] goes beyond general instructions . . . and begins to assign specific tasks, to assign workers, or to take an overly active role in the oversight of the work." *Layton*, 686 F. 3d at 1178 (quoting *Aimable v. Long & Scott Farms*, 20 F. 3d 434, 441 (11th Cir. 1994) (explaining that an agricultural company's decisions about what to plant and how much land to use did not constitute control for FLSA purposes)). "A purported employer takes an overly active role in the oversight of work 'when it decides such things as (1) for whom and how many employees to hire; (2) how to design the employees' management structure; (3) when work begins each day; (4) when the laborers shall start and stop their work throughout the day; and (5) whether a laborer should be disciplined or retained.'" *Id.* (quoting *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209-10 (11th Cir. 2003)). Such control by a purported joint employer must be shown by referencing specific instances where the control allegedly occurred. *Id.*

Molina testified he met Dickerson many times because Dickerson was the manager at the International Palms location where Molina "used to work . . . receiving and handing out the cars."

---

[4] The Jetport facility was DTAG's maintenance center. Andrew Aldrige, employed by DTAG as the City Fleet/Maintenance Manager for Orlando, Florida from May 1, 2011 to July 26, 2013, worked at the Jetport location. (*See* Doc. No. 74-1, Aldridge Decl. ¶ 3).

(Molina Dep., Doc. No. 88-2 at 15:24-16:2, 21-22.) Molina stated that he received work orders from Dickerson "all day long" on a daily basis. (*Id.* at 16:23-17:1.) Additionally, Molina testified that he received instructions "a lot" from Montavlo regarding how to apply bar code stickers to vehicles, how to make the vehicles ready to be rented, and how to clean the vehicles to prepare them for rental. (*Id.* at 17:4-18.) However, Molina admitted that he cannot identify the period of his employment with Hentech when he worked at the International Palms location. (*See* Molina Dep. at 35:22-36:4.) Also, aside from instructions from Dickerson, Montavlo, and one other DTAG representative, Molina stated that he never received instructions from any other DTAG employee, with the exception of an unidentified rental agent that instructed him as to which cars to clean or to move a car. (*Id.* at 21:14-25.) Molina testified that Jaime, a lead driver with Hentech, supervised his work every day. (*Id.* at 32:3-33:18). According to Molina, Jaime instructed Molina when to start work every day, which cars to drive, where he needed to go, and which routes to take. (*Id.* at 28:4-8; 32:8-12; 46:21-47:6.) Also, although a DTAG manager gave orders about how many vehicles needed to go to each location, Molina confirmed that Jaime decided which employees went on the necessary trips. (*Id.* at 31:3-12.)

Assuming Dickerson and Montavlo provided daily instruction to Molina, such instruction is insufficient to find in favor of Plaintiffs on the control factor, as the control was not so extensive that it amounted to control over the terms and conditions of Molina's employment. *See Diaz*, 2013 WL 2046548 (finding in favor of purported joint employer on the control factor and concluding that the purported joint employer's regulation of the plaintiff's hours was akin to the "abstract" control that the Eleventh Circuit found lacking in *Layton*). DTAG had multiple locations where Drivers transported vehicles, and Plaintiffs testified that Hentech's lead Drivers regularly and usually received delivery instructions from DTAG and provided them directly to the Drivers,

including Plaintiffs, unless a lead Driver was not present. (*See* Cedeno Dep., Doc. No. 88-1 at 23:2-7, 15-26:5; Molina Dep. at 32:8-12; Mosquera Dep., Doc. No. 88-5 at 32:22-24; 33:14-25; 34:25-35:2; Sayago Dep., Doc. No. 88-8 at 60:4-9.) DTAG personnel did not hire the Drivers, schedule the specific Drivers, determine the number of Drivers working each day, decide the locations that the individual Drivers would visit on particular days, or typically determine how the Drivers would accomplish their specific duties. (*See* Cedeno Dep. at 19:21-20:2, 13-19, 25-21:11; 43:23-35; 46:2-6; 47:19-21; Molina Dep. at 12:18-22; 26:17-19; Mosquera Dep. at 26:12-15; 27:9-15; 28:1-7; 30:7-13; 36:18-20; 42:14-16; 44:20-45:5; Sayago Dep. at 28:18-29:6; 43:15-44:6; 46:20-23; 60:4-9.) In considering the record evidence regarding the control factor, the Court finds that this factor weighs in favor of a finding that DTAG was not a joint employer, even assuming all factual inferences in favor of Plaintiffs.

*2. DTAG's Degree of Supervision, Direct or Indirect, of the Drivers' Work*

Plaintiffs object to the finding in the R & R that the second factor does not support a joint employment relationship between DTAG and Plaintiffs. (Doc. No. 94 at 4.) Plaintiffs point out the finding in the R & R that "during the last five months, [] Dickerson was personally present at the workplace to oversee operations." (*Id.*; *see* Doc. No. 91 at 15-16.) Plaintiffs also highlight Molina's deposition testimony that he received orders from Dickerson to clean vehicles on a regular basis. (*Id.*) Additionally, Plaintiffs argue that the Magistrate Judge failed to consider the import of the fact that Montavlo had Cedeno's cell phone number for work-related reasons and would provide instructions directly to Cedeno regarding vehicle delivery tasks. (*Id.*)

In *Layton*, even though DHL supervised the drivers during the loading process and in non-routine situations, the drivers were not supervised during the majority of their days when performing their essential function of making deliveries. *See Layton*, 686 F.3d at 1178. The *Layton*

court noted that "[s]upervision can be present regardless of whether orders are communicated directly to the alleged employee or indirectly through the contractor." *Id.* at 1178-79 (citing *Aimable*, 20 F. 3d at 441). However, "infrequent assertions of minimal oversight do not constitute the requisite degree of supervision." *Id.* at 1179 (quotation marks and citation omitted). Similarly, in *Diaz*, the court declined to find a joint employment relationship where bank representatives provided some instruction to security officers that were contracted to work in the bank. *Diaz*, 2013 WL 2046548, at *6-7. Such instructions included telling the bank security officers where to stand and how to greet customers, as well as instructions to stay after hours when the need arose. *Id.* Although the *Diaz* court noted instances when the bank exercised "concrete supervision over" the plaintiffs, it ultimately found that the bank's "infrequent assertions of minimal oversight over [p]laintiffs do not indicate the existence of a joint employment relationship." *Id.*, at *7.

As referenced by Plaintiffs, Molina testified that he received orders from Dickerson to clean vehicles "every day" and "all day long." (Molina Dep. at 16:15-17:1.) Also, Cedeno testified that Montavlo had his cellular telephone number and would provide work-related instructions directly to Cedeno. (Cedeno Dep. at 28:20-29:16; 42:8-14.) However, Cedeno admitted that Montavlo only called him three (3) to four (4) times during Cedeno's years of employment with Hentech. (*See* Cedeno Dep. at 29:3-9.) With the exception of another DTAG representative that contacted Cedeno on his cellular telephone "[s]ix or seven times" regarding transporting a "special car," no one else from DTAG contacted Cedeno on his cellular telephone. (*Id.* at 28:8-14, 20-24.) Also, during "the last four or five months that [Cedeno] worked [for Hentech,]" Dickerson allegedly gave daily work-related instructions directly to Cedeno; however, prior to that time period, Cedeno only received instructions directly from Dickerson on approximately twelve (12) occasions. (*Id.* at 24:2-26:10.) Additionally, Cedeno testified to calling the lead Drivers with

questions regarding vehicle pick-up and delivery more often than he called Montavlo, and he also testified that it was "rare" for him to call Montavlo. (*Id.* at 42:15-43:18.)

Even if DTAG provided work-related instructions to Plaintiffs throughout the course of their employment, "infrequent assertions of minimal oversight do not constitute the requisite degree of supervision" to find in favor of a joint employment relationship. *See Layton*, 686 F.3d at 1178. The amount of calls and instances of instruction given to Plaintiffs directly from DTAG representatives, viewed over the course of Plaintiffs' employment with Hentech, is insufficient to find that DTAG supervised Plaintiffs, directly or indirectly, to such a degree that merits a finding of joint employment. In light of the totality of the undisputed facts, and when viewing the evidence in the light most favorable to Plaintiffs, the record evidence fails to support a finding that DTAG qualifies as Plaintiffs' joint employer. Accordingly, the second factor does not weigh significantly in favor of a finding of joint employment.

*3. DTAG's Right, Directly or Indirectly, to Hire, Fire, or Modify the Drivers' Employment Conditions*

Plaintiffs object to the Magistrate Judge's findings that the third factor does not support a finding that DTAG was Plaintiffs' joint employer. Plaintiffs argue that "[t]he evidence reflected that DTAG had the right to indirectly modify Plaintiffs' working conditions." (Doc. No. 94 at 4.) Plaintiffs argue that DTAG had control over the hiring and firing of the Drivers. (*See id.*) Plaintiffs provide testimony by Molina that his workday did not end until the work was done and that DTAG decided when Plaintiffs went home. (*Id.*) Additionally, Plaintiffs aver that Nketeh's affidavit corroborates their argument that DTAG dictated the days and times that Drivers, including Plaintiffs, worked. (*Id.* at 5.)

Molina testified that a DTAG manager decided when the Drivers "could leave in accordance with the movement of cars and the need to move cars at the locations." (Molina Dep. at 27:6-9, 28:9-21.) In his affidavit, Nketeh states that DTAG had control over the Drivers, and that DTAG representatives directed the Drivers as to whether they needed to stay late or leave early on certain days. (Nketeh Aff., Doc. No. 79-1 ¶ 13.) However, "minimal involvement with the employment process does not suggest joint employment." *Diaz*, 2013 WL 2046548, at *8 (bank's power to refuse to permit a particular security guard from working at one of the bank's locations constituted only a limited power to modify employment conditions because the company that hired the security guard could assign him to work for another client). Even though the amount of work that the Drivers performed was based on the needs of DTAG on particular days, Hentech had control over the amount of work each Driver performed by controlling the number of Drivers hired, the number of Drivers scheduled to work each day, and the number of Drivers assigned to move cars for DTAG each day. Also, Plaintiffs testified that they received hiring paperwork from Hentech and were hired by Hentech, not DTAG. (Cedeno Dep. at 9:20-10:11; 12:4-13; 16:8-17; Molina Dep. at 22:12-16; 23:14-19; Mosquera Dep. at 9:22-10:9; 36:12-17; Sayago Dep. at 21:12-18.) DTAG's rights to modify the terms of Plaintiffs' employment did not rise to the level necessary to weigh in favor of finding that DTAG was Plaintiffs' joint employer. Thus, the third factor does not weigh significantly in favor of a finding of joint employment.

*4. DTAG's Power to Set the Drivers' Pay Rates or Payment Methods*

Plaintiffs concede that they have not developed evidence to show that DTAG had the power to set the Drivers' pay rates or payment methods. (*See* Doc. 79 at 5 n.2.) Accordingly, the Court agrees with the Magistrate Judge's finding that the fourth factor weighs in favor of finding that DTAG was not Plaintiffs' joint employer.

*5. DTAG's Preparation of Payroll and Payment of the Drivers' Wages*

Plaintiffs admit that they have not developed evidence to show that DTAG prepared the payroll for the Drivers or paid the Drivers. *Id.* The Court agrees with the Magistrate Judge's finding that the fifth factor weighs in favor of finding that DTAG was not Plaintiffs' joint employer.

*6. DTAG's Ownership (or Leasing) of the Facilities Where the Drivers' Work Occurred*

Plaintiffs did not provide any specific objections to the Magistrate Judge's finding that the sixth factor weighs somewhat in favor of a finding that DTAG was Plaintiffs' joint employer. Courts have found that the ownership factor is probative of joint employment because without ownership, the worker may not have work. *Martinez-Mendoza*, 340 F.3d at 1214. Additionally, a business that owns or controls the worksite will likely be able to prevent labor law violations. *Id.* In this case, DTAG owned or otherwise had some control over facilities where the Drivers performed their work, including the Jetport maintenance facility. Additionally, it is undisputed that DTAG owned the automobiles that the Drivers transported on a regular basis. The Court agrees with the Magistrate Judge's finding that this factor weighs somewhat in favor of a finding that DTAG was Plaintiffs' joint employer during the relevant time period.

*7. The Drivers' Performance of a Specialty Job Integral to the Business*

Plaintiffs did not provide any specific objections to the Magistrate Judge's factual findings concerning the seventh factor, and the Magistrate Judge's findings regarding same are not clearly erroneous. As discussed in *Layton,* "'a worker who performs a routine task that is a normal and integral phase of the alleged employer's production is likely to be dependent on the alleged employer's overall production process.'" *Layton*, 686 F.3d at 1180 (quoting *Antenor v. D & S Farms*, 88 F.3d 925, 937 (11th Cir. 1996)); *see Rutherford Food Corp. v. McComb*, 331 U.S. 722, 725-27, 67 S. Ct. 1473, 1474-75 (1947) (meat boners recruited by a labor contractor to work at a

slaughterhouse were joint employees of the slaughterhouse, in part because they were performing a specialty job that was integral to the business while working at processing stations in the slaughterhouse).

Indisputably, DTAG was in the car rental business at all times relevant to this case. (Doc. No. 90 at 4.) Plaintiffs were hired primarily to transport DTAG vehicles to and from various locations for maintenance and repair. (*See id.* at 2; Aldridge Decl. ¶ 7.) Plaintiffs' work for Hentech was not a specialty job that was so integral to DTAG's rental business that this factor clearly weighs in favor of finding a joint employment relationship. *Layton*, 686 F.3d at 1180 (finding that the seventh factor does not strongly support a conclusion that a joint employment relationship existed, even though drivers delivered packages for DHL, noting that the drivers did not work side-by-side with DHL employees and they performed most of their work driving vehicles without direct supervision by DHL). The Magistrate Judge's findings regarding the seventh factor were not clearly erroneous, and the seventh factor weighs against finding that DTAG qualified as Plaintiffs' joint employer.

*8. DTAG and Hentech's Relative Investment in Equipment and Facilities*

Plaintiffs object to the Magistrate Judge's finding that the eighth factor does not weigh in favor of or against a finding of joint employment. (Doc. No. 94 at 5-6.) Plaintiffs aver that DTAG owned all of the vehicles that the Drivers transported, as well as the vans used to transport the vehicles between locations. (*Id.* at 5.) Plaintiffs also allege that they mostly worked at and made deliveries to DTAG rental locations, and that this factor weighs in favor of Plaintiffs as it should be reasonably inferred that DTAG had a much greater investment in equipment and facilities then Hentech. (*Id.*)

Courts consider a purported joint employer's relative investment in equipment and facilities because "workers are more likely to be economically dependent on the person who supplies the equipment or facilities." *Layton*, 686 F.3d at 1181 (citing *Antenor*, 88 F.3d at 937). When both the purported joint employer and contractor make investments in equipment or facilities, "this factor does not aid our joint-employment inquiry." *Id.*; *see also Aimable*, 20 F. 3d at 443 (alleged joint employer and labor contractor both made significant investments in equipment and facilities, and this factor thus failed to demonstrate that the plaintiffs were economically dependent on the purported joint employer).

Sayago and Mosquera testified that they rarely met at Hentech's office. (Sayago Dep. at 31:12-20, Mosquera Dep. at 45:13-25.) Further, evidence supports Plaintiffs' position that the majority of locations where Plaintiffs worked and made deliveries to were DTAG locations. (*See* Aldridge Decl. ¶ 7; Nketeh Aff. ¶¶ 5, 19; Molina Dep. at 15:25-16:2; Mosquera Dep. at 58:12-23; Sayago Dep. at 60:13, 82:22-24.) Also, Defendants have confirmed that the rental vehicles that Plaintiffs transported were DTAG vehicles. (*See* Doc. No. 73 at 20; *see also* Nketeh Aff. ¶ 18.) However, Plaintiffs admittedly drove vehicles between various locations throughout their workdays, and the nature of Plaintiffs' job as Drivers does not align with them being physically present at one single location all day where a DTAG employee could notice or control labor law violations. Additionally, as part of the contract with DTAG, Hentech provided workers' compensation insurance and assumed the loss related to any theft, destruction or accident to any vehicle while in Hentech's possession. (Doc. No. 90 at 5; *see* Aldridge Decl. ¶ 5.) Further, Plaintiffs wore work uniforms provided by Hentech with Hentech's logo and, with the exception of Molina who wore a DTAG shirt only when working at hotel locations cleaning cars, Plaintiffs did not wear uniforms with DTAG's logo. (Cedeno Dep. at 15:3-21; 15:24-16:6; Molina Dep. at

57:20-23; 58:5-13, 17-22; 60:1-6; Mosquera Dep. at 13:12-14; 14:1-3; Sayago Dep. at 81:15-18.) In addition, undisputed testimony evidences that Plaintiffs visited Hentech's facilities on numerous occasions for meetings and to complain about their pay amounts. (Molina Dep. at 51:12-15; 52:1-3; 63:10-13; Mosquera Dep. at 45:13-46:8; Sayago Dep. at 31:12-20.) As both Hentech and DTAG invested in the equipment and facilities necessary for the Drivers to carry out the contract between Hentech and DTAG, the Court agrees with the Magistrate Judge's finding of neutrality as to the eighth factor.

Upon consideration of the totality of the factors and the individual relationships that each Plaintiff had with DTAG, viewing the facts most favorably toward Plaintiffs and with all justifiable inferences drawn in their favor, DTAG was not Plaintiffs' joint employer during the relevant time period and is not liable in that capacity under the FLSA. The Court has thoroughly examined the record evidence concerning the realities of the economic relationships between Defendants and Plaintiffs, and the Court finds that there is no material issue of fact or law precluding summary judgment in Defendants' favor.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

1. Magistrate Judge Spaulding's February 9, 2015, Report and Recommendation (Doc. No. 91) is **ADOPTED and CONFIRMED** and made a part of this Order.

2. Plaintiffs Alberto Molina, Nelson Sayago, Gustavo Cedeno, and Hugo Mosquera's Objections to the Report and Recommendation (Doc. No. 94), filed February 25, 2015, are **OVERRULED**.

3. Defendants Dollar Thrifty Automotive Group, Inc. and Hertz Global Holdings, Inc.'s Motion for Summary Judgment (Doc. No. 73), filed November 3, 2014, is **GRANTED**.

4. On or before April 1, 2015, Plaintiffs **SHALL** either move for default judgment against Defendants Hentech, LLC, and JIC Drive Service, Inc. or voluntarily dismiss these parties to this action. In accordance with the Magistrate Judge's R & R, Plaintiffs should also file a notice of dismissal of their claims against Defendant Henry Nketeh, on or before April 1, 2015, if still appropriate. Thereafter, the Court will enter judgment accordingly.

5. The Clerk is **DIRECTED** to remove this case from the April 2015 trial docket.

6. Defendants Dollar Thrifty Automotive Group, Inc. and Hertz Global Holdings, Inc.'s Motion in Limine to Exclude Evidence or Testimony from the Trial (Doc. No. 75), filed December 3, 2014, is **DENIED** as moot.

**DONE** and **ORDERED** in Orlando, Florida on March 18, 2015.

*[Signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties